117 N.J. Super. 196 (1971)
284 A.2d 190
ERNEST HURWITZ, RUTH HURWITZ, MALCOLM PARKER, TERRY PARKER AND CARL NORMAN LUCK, PLAINTIFFS-APPELLANTS,
v.
J. WILLIAM BOYLE, ALFRED E. SANDERS, HARRY N. FRANK, JR., TOBIAS H. MAYER, AUGUST J. DAESENER, JR., WALTER J. KOZLOSKI, ROGER J. KANE, HENRY T. LEFKOWICH AND THE BOROUGH OF FREEHOLD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1971.
Decided November 29, 1971.
*199 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Robert I. Ansell argued the cause for appellants (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys; Mr. Ansell, on the brief).
Mr. Jerry Sokol argued the cause for respondents.
The opinion of the court was delivered by LANE, J.A.D.
Plaintiffs appeal from a denial of their motion for summary judgment to declare invalid ordinance No. 562 of the Borough of Freehold known as "Parade Ordinance for the Borough of Freehold." The trial court held certain specific sections invalid and declared the balance of the ordinance valid. Thereafter the borough passed an amendatory ordinance in accordance with the trial court's ruling. We consider the ordinance as amended.
Plaintiffs argue that the ordinance violates due process and is void (1) for substantive vagueness in that it sweeps too broadly and brings within its terms totally innocent and constitutionally protected activity; (2) for procedural vagueness in that it fails to give fair and adequate notice to the citizenry of the activity which it intends to prohibit and the requirements necessary to avoid criminal liability, and (3) in that it constitutes a prior restraint on freedom of speech, assembly and the right to petition the government and fails to provide specific procedural safeguards prior to implementation of final action of the governing body. Plaintiffs further argue that the ordinance violates the provisions of the United States Constitution and the New Jersey Constitution providing for freedom of speech, freedom of assembly and the right to petition the government.
In section II the ordinance defines "parade" as "any parade, march, ceremony, show, exhibition, pageant, procession of any kind, or any similar display in or upon any street, park, or other public place in the Borough of Freehold."
*200 Section III prohibits any parade unless a permit has been obtained from the municipality. Among the exceptions are funeral and wedding processions, a governmental agency acting within the scope of its function, and students participating in educational activities under the authorization of the proper school authorities of the borough. This section also establishes a two-dollar fee for the issuance of a permit.
Section IV sets forth the contents of the application for a permit and provides for its filing at least 20 days before the scheduled date of the parade.
Section V provides that a permit shall issue upon a finding that:
(a) The conduct of the parade will not substantially interrupt the safe and orderly movement of other traffic contiguous to its routes;
(b) The conduct of the parade will not require the diversion of so great a number of police officers of the Borough of Freehold to properly police the line of movement and the area contiguous thereto as to prevent normal police protection of the Borough of Freehold;
(c) The conduct of such parade will not require the diversion of so great a number of ambulances as to prevent normal ambulance service to portions of the Borough of Freehold other than that to be occupied by the proposed line of march in areas contiguous thereto;
(d) The concentration of persons, animals and vehicles at assembly points of the parade will not unduly interfere with the proper fire and police protection of or ambulance service to areas contiguous to such assembly areas;
(e) The conduct of such parade will not interfere with the movement of fire fighting equipment enroute to a fire;
(f) [Deleted by amendment.]
(g) The parade is scheduled to move from its point of origin and to its point of termination expeditiously and without unreasonable delays enroute;
(h) The parade is not to be held for the sole purpose of advertising any product, goods or event, and is not designed to be held purely for private profit.
Section VI provides:
If the Mayor and Council shall approve the applicant, they shall mail to the applicant at least five days prior to the date of the parade, a notice of their action. In the event that such application shall not be approved, like notice shall be sent at least five days *201 prior to the date of such parade setting forth the reason for such denial of the permit.
Section VII provides:
(a) The Mayor and Council in denying any application for a parade permit shall be empowered to authorize the conduct of the parade on the date, at a time or of a route different than that named by the applicant. Any applicant desiring to accept an alternate permit, shall within three days after notice of the action of the Mayor and Council file a written notice of acceptance with the Borough Clerk. An alternate parade permit shall conform to the requirements of, and shall have the effect of a parade permit under this Ordinance.
(b) The Mayor and Council shall be prohibited from the approving of more than one parade permit for any one 24 hour period. Where there is more than one parade application for the same date, the application received first in time will be granted the parade permit provided all the conditions of the ordinance are complied with.
(c) The engaging in, participating in, aiding, forming or starting any parade before 1:30 P.M. on Sunday shall be prohibited.
The other section to which objection is made is section XIV which provides:
The Mayor and Council shall have the authority to revoke a parade permit issued hereunder upon application of the Standards for Issuance as herein set forth. It shall be a ground for revocation when any such application shall fail to contain all the contents as set forth under Section IV and other Sections of this Ordinance.
Section XV fixes as penalty for a violation of the ordinance "a fine of not more than $200.00 or imprisonment in the county jail for a term not exceeding thirty days or both."
Plaintiffs' attack is primarily based on the argument that the ordinance inhibits freedom of speech. The rights of free speech do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order. The control and government of travel on the streets is a clear example of governmental responsibility to insure *202 this necessary order. "A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection." Cox v. Louisiana, 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471, 484 (1965); Cox v. New Hampshire, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049, 1052-1053 (1949).
While the First Amendment does not afford the same kind of freedom to those communicating ideas by conduct such as patrolling, marching and picketing on streets and highways as afforded to those communicating by "pure speech," such conduct may nonetheless constitute methods of expression entitled to First Amendment protection. See Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Cox v. Louisiana, supra; 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471; Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The constitutional right of free speech and assembly cannot be abridged simply because others may take offense at what is being said or advocated and create a disturbance. See Bachellar v. Maryland, 397 U.S. 564, 567, 90 S.Ct. 1312, 1314, 25 L.Ed.2d 570, 574 (1970); Street v. New York, 394 U.S. 576, 592, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572, 585 (1969); Cox v. Louisiana, supra, 379 U.S. at 550-551, 85 S.Ct. 453; Edwards v. South Carolina, supra, 372 U.S. at 237-238, 83 S.Ct. 680; Terminiello v. Chicago, 337 U.S. 1, 4-5, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134-1135 (1949)
Plaintiffs concede that a municipality has the right and duty to regulate and control traffic on its streets.
It is our duty to construe the ordinance to render it constitutional if such a construction is reasonably susceptible. State v. Profaci, 56 N.J. 346, 350 (1970); Camarco v. Orange, 116 N.J. Super. 531 (App. Div. 1971).
*203 The activity that the ordinance seeks to control is a parade in the usual sense of the word. We construe "parade" as used in section II of the ordinance to mean what is generally understood to be a parade, i.e., a large group of persons with or without animals or vehicles in a public procession or march in or upon any street, park or other public place in the borough.
Plaintiffs argue that sections V(b) and (c) are invalid because they refer to interference with "normal" police protection and ambulance service in the borough. Within the context that that word is used, it means a substantial interference with the police and first aid men so that other parts of the borough would be left unprotected during the course of the parade. We see nothing vague in such use of the word. The standards set up in section V for issuance of a permit being directly related to the borough's control of its streets and protection of its residents are reasonable.
Plaintiffs argue that the ordinance constitutes a prior restraint upon First Amendment rights. They argue that the ordinance vests arbitrary discretion in the governing body to deny an application for a permit. We point out that the ordinance does not vest complete discretion in the governing body. It sets forth standards in section V that must be followed in the consideration of any application. All of the standards in section V are reasonably related to the borough's interest in keeping streets, public ways and public grounds open and free for the use of the community. The ordinance is clear that a permit shall be issued if the parade will not substantially interrupt the safe and orderly movement of other traffic or require such use of police and ambulances as to leave the rest of the borough unprotected or will not interfere with fire fighting apparatus. These requirements are reasonable. There is no indication that the licensing power is to be used to discriminate against First Amendment rights. There is very little discretion in the governing body.
*204 The requirement of a two-dollar fee is reasonable. See Cox v. New Hampshire, supra, 312 U.S. at 576-577, 61 S.Ct. 762. The contents of the application are related to the standards for issuance of a permit. The information called for in the application does not place an undue burden on an applicant, and the requiring of such information by the borough is reasonable and necessary to allow it to determine if the parade will comply with the standards for issuance.
Plaintiffs' main argument under this point is directed towards section VI in that notice of rejection may be given as late as five days before the scheduled date of the parade and the ordinance sets forth no means for review of a rejection by the governing body. They draw the conclusion that the effect of these provisions is to make the denial by the governing body final.
Legislation allowing prior restraints of First Amendment rights comes into court bearing a heavy presumption against its validity. Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325, 331 (1968); Freedman v. State of Maryland, 380 U.S. 51, 57, 85 S.Ct. 734, 738, 13 L.Ed.2d 649, 654 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593 (1963). Even where this presumption might be overcome, the Supreme Court has required careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit. Carroll v. President & Comm'rs of Princess Anne, supra. A noncriminal process of prior restraints "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." Freedman v. Maryland, supra, 380 U.S. at 58, 85 S.Ct. 734.
The Rules of Court grant to an applicant whose application has been rejected speedy, adequate judicial relief from the rejection. Such an applicant can bring a summary action pursuant to R. 4:67 et seq. However, an applicant is unlikely to obtain relief by a proceeding under that *205 rule when there is only five days between the notice of rejection and the date for which the parade is scheduled. The provision of section VI allowing the governing body to withhold a determination until five days before the scheduled date of the parade is unconstitutional. The invalidity of this section would normally require that the entire ordinance be declared invalid. However, at the oral argument the borough indicated that it was willing to amend the ordinance to comply with any constitutional requirements. To comply with constitutional requirements, the ordinance must be amended to provide that the governing body will give notice of its action on any application within five days of the filing of the application. By this we do not mean that the governing body will act five days after the filing of the application, but that notice of the action of the governing body will be given to the applicant no later than five days from the date of the filing of the application. The defendants are given 45 days to adopt an amendment in accordance with the views we have expressed.
We see no constitutional infirmity in limiting the number of parades to one in any 24-hour period. The 24-hour period referred to means one day. It does not mean from 12 noon of one day until 12 noon the next day. It means from 12:01 A.M. to 12:00 midnight.
On the other hand, we see no justification for prohibiting parades on Sundays before 1:30 P.M. On Sunday mornings municipal streets do not have the average shopper or the average office worker. In our experience the streets are less crowded on Sundays than at any other time during the week. It is possible that because of church attendance a particular street might be congested. If that be the case, however, the governing body under section VII(a) can prescribe an alternate route bypassing the small congested area surrounding the church. Section VII(c) is invalid.
We see no justification for section XIV which allows a revocation of the permit. The determination of whether the application complies with the standards for issuance is *206 made before the governing body directs the issuance of the permit. We conceive of no situation that would warrant the governing body in revoking a permit. If the fear of the governing body is that the information contained in the application may have been false and its falsity discovered after the issuance of the permit, the governing body has a remedy by applying to the court for an injunction. Section XIV is invalid.
Ordinance No. 562 of the Borough of Freehold as construed in this opinion, with the exception of sections VII (c) and XIV, is valid, but only if section VI is amended as we have suggested.
The judgment is modified in accordance with this opinion.