Affirmed by published opinion. Judge WIDENER wrote the majority opinion, in which Senior Judge HAMILTON concurred. Judge MICHAEL wrote a dissenting opinion.
OPINION
WIDENER, Circuit Judge.
Plaintiff John D. Reyes appeals the district court’s grant of summary judgment to the City of Lynchburg (“the City”) on Reyes’s 42 U.S.C. § 1983 claim. Reyes sought nominal damages under § 1983, an injunction against future enforcement of the City’s parade ordinance, and a declaration that the City’s parade ordinance was unconstitutional on its face and as applied to him. The district court found the City’s parade ordinance defective because it did not provide one adequate procedural safeguard; however, the court held that Reyes could not sustain a valid claim under § 1983 because the City did not violate Reyes’s constitutionally protected interests. We affirm the grant of summary judgment to the City.[1]
I.
On November 10, 1997, Reyes, along with other protesters, held an anti-abortion protest on and around the grounds of a public high school in Lynchburg, Virginia. None of the protesters had applied for or received a parade permit under the City’s parade ordinance. A grand jury indicted Reyes for violating the ordinance, trespassing on school property and engaging in disorderly conduct. Reyes was found guilty of trespass only in the Circuit Court of the City of Lynchburg.[2]
The parade ordinance provided that “[i]t shall be unlawful for any person to conduct or participate in a parade ... on the public streets, sidewalks ... for which a written permit has not been issued in accordance with the provisions of this article.” Lynchburg, Va., Code art. X, § 25-374.1 (repealed March 10, 1998). On February *452 27, 1998, Reyes and Keith Tucci filed a complaint in the district court pursuant to § 1983 challenging the constitutionality of the parade ordinance on its face and as applied to Reyes and seeking declaratory relief and an injunction prohibiting the City from enforcing the parade ordinance in the future. Reyes and Tucci also alleged that they planned another protest but feared arrest, criminal and/or civil prosecution and penalties under the parade ordinance and were thereby “deterred and chilled in the exercise of their fundamental constitutional rights.” For damages, Reyes claimed: “Award to John Reyes nominal damages....” A. 18. On June 24, 1998, the district court found that because the City repealed the parade ordinance on March 10, 1998, the action for declaratory relief was moot.[3] The court dismissed Tucci as a party o the action, but denied the City’s motion to dismiss as to Reyes, reasoning that Reyes’s § 1983 claim for nominal damages created a live controversy. Tucci is not a party to this appeal.
The parties filed cross-motions for summary judgment. After a hearing, the district court granted the City’s motion. Due to the court’s prior ruling that the case was moot as to future conduct, the court found that a facial challenge to the parade ordinance was moot as well. The court entertained Reyes’s claim that the parade ordinance was unconstitutional as applied to him and found that the parade ordinance was defective.[4] Despite this finding, the court held that the City did not violate Reyes’s First Amendment rights or his Fourteenth Amendment due process rights and granted summary judgment to the City.
We review de novo the district court’s grant of summary judgment to the City, viewing the evidence in the light most favorable to the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although we affirm the district court’s decision to grant summary judgment to the City, we do so on different reasoning than relied upon by the district court. Securities & Exch. Comm’n v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).
II.
Reyes asserts the following issues in this appeal: 1) the City’s parade ordinance is facially unconstitutional because it lacks adequate procedural safeguards and is overbroad, 2) the parade ordinance is unconstitutional as applied to him, and 3) the court erred in relying upon affidavits of City officials. The City cross appeals the court’s finding that the parade permit was procedurally defective and asks this court either to affirm the district court’s grant of summary judgment to the City or to dismiss the case as moot.
We first address whether the district court properly refused to examine Reyes’s overbreadth challenge to the pa *453 rade ordinance upon determining that the challenge was moot. On June 24, 1998, the court ruled that the case was moot as to future application of the parade ordinance because the City had repealed it and promised not to reenact a similar one. We agree with the district court that the repealed parade ordinance cannot now, if it ever did, reach any amount of constitutionally protected conduct.[5] The question of overbreadth does not present a live case or controversy for this court. There is no reasonable expectation that Lynchburg will reenact the ordinance. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), see also Telco Communications, Inc. v. Carbaugh, 885 F.2d 1225, 1231 (4th Cir.1989).
We next address Reyes’s other assertions about the repealed parade ordinance and the grounds for his § 1983 action. As an initial matter, we note that Reyes sought nominal damages from the City under § 1983. Nominal damages may be available in a § 1983 case if a plaintiff was deprived of an absolute right yet did not suffer an actual injury. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (holding that the right to procedural due process is absolute making the deprivation of the right actionable for nominal damages without proof of actual injury). Reyes claims the City violated his First Amendment right to free speech and his Fourteenth Amendment due process rights by applying the parade ordinance, which he asserts was unconstitutional, against him.[6] The district court considered Reyes’s challenge to the parade ordinance as applied to Reyes and found it did not provide a specified time for the chief of police to act upon the application for a parade permit and found the ordinance defective because it did not provide adequate procedural safeguards. Without such safeguards, the court determined that the ordinance posed a danger of impermissibly restraining free speech rights.
The parade ordinance in question provided in pertinent part:
(a) The chief of police, or his designee, shall issue the permit if the proposed parade, assemblage or picketing will not endanger public health, welfare, or safety, applying the following criteria and finding that:
(1) the time, duration, route and size of the parade ... will not unreasonably interrupt the safe and orderly movement of ... traffic;
(2) the parade ... is not of such a nature that it will require diversion of so great a number of police or fire personnel to properly police the line of movement in the areas contiguous thereto so as to impair the normal protection of the remainder of the [CJity;
(3) the applicant has provided for the services of monitors sufficient to control the orderly conduct of the parade ... in conformity with such permit;
(4) the conduct of the parade ... will not unduly interfere with the proper *454 fire and police protection of, or ambulance service to, the remainder of the [C]ity, or unreasonably disrupt other public services and protection normally provided to the [C]ity; and (5) the parade ... will not interfere with another parade ... for which a permit has been granted.
(b) If the chief of police, or his designee, disapproves the application, he shall mail to the applicant a notice of his action, stating the reasons for his denial of the permit.
(c) Nothing in this article shall permit the chief of police, or his designee, to deny a permit based upon political, social, or religious grounds or reasons or based upon the content of the views expressed.
Lynchburg, Va., Code art. X, § 25-374.3 (repealed March 10, 1998) (emphasis added).
The other sections of the parade ordinance germane to the analysis are: any person desiring to conduct a parade must make an application to the chief of police 48 hours prior to the parade, § 25-374.2(a); the chief of police has the authority to consider applications filed less than 48 hours prior to the parade where the applicant shows good cause, § 25-374.2(c); and an applicant whose permit was disapproved may appeal to the City Manager within 48 hours, and the City Manager must act on the appeal within five working days after its receipt, § 25-374.7.
A city, such as Lynchburg, is justified in setting forth regulations and ordinances requiring advance parade permits as a traditional exercise of control by the local government. Cox v. New Hampshire, 312 U.S. 569, 574, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). These ordinances are generally treated as time, place, and manner restrictions and are upheld by courts if they are content neutral, serve a substantial governmental interest, and leave open alternative avenues of communication. See FW/PBS, Inc., 493 U.S. at 245 (White, J., concurring in part and dissenting in part) (citations omitted). A court may invalidate a permit scheme if, despite being content neutral, the scheme vests unbridled discretion in the decision-maker. See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-52, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (striking down a content-based parade ordinance). The district court found that although the parade ordinance did not give the chief of police unbridled discretion, it did not contain all of the procedural safeguards required to constitute a permissible prior restraint. As noted, the court interpreted the ordinance as failing to provide a specific time frame in which the chief of police, or his designee, should consider the permit application and found that the lack of such time frame violated the requirement set forth in Freedman v. Maryland, 380 U.S. 51, 58-60, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965),[7] and FW/PBS, Inc. See also 11126 Baltimore Blvd. v. Prince George’s County, 58 F.3d 988, 996 (4th Cir.) (en banc), cert. denied, 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995).
At this point we emphasize that there is no claim in this case of content discrimina *455 tion in the issuance or non-issuance of parade permits. And we emphasize that the ordinance in question, as previously noted, provides that the chief of police may not “deny a permit based upon political, social, or religious grounds or reasons or based upon the contents of the views expressed.” So the quite serious question which confronts the courts in many such cases does not exist here.
Also, no question is made in this case of any burden of proof required by the City to support the denial of a parade permit, the third Freedman requirement.
The district court held that the available Virginia procedures for judicial review of the denial of parade permits complied with the second Freedman requirement, that of available expeditious judicial review. While it is true that in Virginia, under Virginia Code § 15.2-1404, “[e]very locality may sue or be sued in its own name in relation to all matters connected with its duties,” thus opening the door for litigation in such cases, it is of even more importance that the extraordinary remedy of mandamus is available in such cases as this, both in the circuit courts, which are courts of general jurisdiction, and also even in the Supreme Court of Virginia, as a court of original jurisdiction. See Virginia Code §§ 17.1-513 and 17.1-309. See also Burk’s Pleading and Practice (1952) § 199. Mandamus by the highest court in a State is certainly a plain and efficient remedy, and probably speedy, for “[i]f no defense is made and the petition states a proper case for the writ, a peremptory writ is awarded with costs.” Burk’s, p. 325. That the Supreme Court of Virginia does not hesitate to award the writ in an original proceeding against a local official, even the Registrar of the South Wise Precinct in Wise County, is demonstrated in Kennedy v. Skeen, 165 Va. 166, 186 S.E. 926 (1935).
Although it is likely that the Virginia courts would give relief in a prompt enough manner to satisfy the Freedman requirement, there has been no analysis in this case of any time requirements such as was made in 11126 Baltimore v. Prince George’s County Maryland. So we express no opinion on that question.
For the purposes of our analysis, we will assume, without deciding, to be correct the decision of the district court, that the ordinance in question does not sufficiently restrict the time in which the chief of police must grant or deny a parade permit; and for the purposes of our analysis, we will also assume, without deciding, that the Freedman requirement of prompt judicial review has not been complied with.
III.
All of the above leads us to the position that the only question remaining in the case is whether or not Reyes, under § 1983, may prosecute a civil cause of action for nominal damages against the City for his indictment, trial and acquittal under the parade ordinance which was later held to be unconstitutional.[8] We hold that he may not.
*456 The position of Reyes is succinctly stated in his brief:
The City enacted and maintained the Ordinance. It remained exclusively within the City’s prerogative to amend or repeal the Ordinance, and the City chose neither until after Reyes had been indicted and criminally prosecuted under the Ordinance. Such inaction in the context of a facially unconstitutional Ordinance renders the City liable. Br.26.
We follow the case of Richardson v. City of South Euclid, 904 F.2d 1050 (6th Cir.1990), cert. denied, 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 681 (1991), a case essentially on all fours with the case at hand. In that case, Ronnie and Diva Richardson, husband and wife, moved to South Euclid in May of 1986. In October, the City of South Euclid passed an ordinance which made it a misdemeanor to own, operate, or manage a brothel or to invite or entice another to engage in acts of lewdness or sexual conduct. In December, 1986, the Richardsons were charged with violating that ordinance, and on June 26, 1987, the charges against the Richardsons were dismissed when the Municipal Court of South Euclid found the ordinance to be vague, overbroad, and unconstitutional on its face under the First and Fourteenth Amendments. The decision of the Municipal Court was affirmed by the Ohio Court of Appeals and then by the Ohio Supreme Court in 1990.
The Richardsons, in the meantime, had filed a suit under 42 U.S.C. § 1983 in the district court against the City and certain City officials, claiming to have suffered humiliation, emotional distress, physical harm, loss of earnings, and legal expenses as a result of their defense against the prosecution. They sought $250,000 in damages. The district court granted summary judgment to the City because it found no Constitutional deprivation sufficient to support the § 1983 suit. This holding was affirmed by the Sixth Circuit. That court stated the question as follows:
We next examine whether the Richard-sons, having been prosecuted under an unconstitutional ordinance, suffered a constitutional deprivation sufficient to support a claim under 42 U.S.C. § 1983....
The Richardsons claimed a loss of liberty interest as a result of being required to bear the burden of defending against a criminal prosecution brought under an invalid ordinance. 904 F.2d at 1052. The court, citing Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), noted that even the three-day detention in Baker did not amount to a deprivation of liberty recognized under § 1983 since the police had complied with due process of law. Accordingly, Richardson held that the prosecution did not deprive the Rich-ardsons of any liberty interest. “The Richardsons were not convicted without notice and trial. They were charged in *457 writing, permitted an opportunity to respond in open court, and vindicated by the dismissal of all charges after the municipal court found the ordinance unconstitutional.” 904 F.2d at 1053. The court held that, under those facts which are essentially the same as those in Reyes’s case, they were not deprived of any liberty interest because the ordinance was later held to be unconstitutional. 904 F.2d at 1053. We agree.
The Richardsons also argued that prosecution under an ordinance subsequently deemed to be invalid automatically gives rise to a cause of action under § 1983. This argument is very much akin to the argument Reyes makes here and which we have quoted from his brief just above. The argument goes that apparently the unconstitutionality of the law itself should supply the Constitutional element underlying a valid claim under § 1983. 904 F.2d at 1054. The Richardson court held there was no automatic § 1983 claim on account of prosecution under the invalid ordinance. The court relied on Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for the proposition that a procedural deficiency in due process may be actionable but that to prosecute such a claim “[t]he plaintiff [must] ... convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.” 435 U.S. at 263, 904 F.2d at 1055. The Richardson court found no denial of procedural due process, and none is even claimed here.
The court concluded that
This [concern for the integrity of the judicial process] suggests to us that a per se cause of action for persons prosecuted under a law later to be determined unconstitutional should be rejected because it would place state law enforcement officials in the precarious position of having to determine whether a new law is valid and worthy of their enforcement before risking, through enforcement, suffering damages should the law later be deemed invalid. We think the fourteenth amendment does not contemplate that state of affairs.
904 F.2d at 1055.
We are unable to distinguish the case at hand from Richardson. Indeed, if anything, this case would seem to be stronger for the City of Lynchburg because only nominal damages are claimed, and Reyes was acquitted rather than convicted under the ordinance in question. We agree with Richardson.[9]
The judgment of the district court is accordingly

AFFIRMED.

[10]

. The judgment being affirmed, the City’s cross-appeal is dismissed as moot.

. Reyes challenged the constitutionality of the parade ordinance before the circuit court, which did not address the issue.

. Tucci announced his intention to protest at the public high school on March 13, 1998. Lynchburg’s City Attorney told Tucci and Reyes that the City and the Commonwealth’s Attorney would not enforce the ordinance until the City Council reviewed it. Thereafter, the City repealed the ordinance altogether. Additionally, the City reassured Reyes and Tucci that it had no intention of reenacting the parade ordinance.

. The court found that the parade ordinance did not provide a specific time frame for the decisionmaker to consider parade permit applications.

. We also note that facial invalidation of a law for overbreadth is "strong medicine,” Broadrick v. Oklahoma, 413 U.S. 601, 613-14, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and is generally disfavored unless the law promotes a licensing scheme giving unbridled discretion to the decisionmaker. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion) (O'Connor, J.) & 261 (Scalia, J., concurring in part and dissenting in part).

. Reyes must be considered to refer to his indictment and prosecution under the ordinance because he never attempted to apply for a permit as required under the ordinance.

. The Supreme Court in Freedman identified three requirements necessary to ensure a prompt decision for permits or licenses for First Amendment activities: 1) any restraint prior to judicial review can be imposed only for a specified brief period during which status quo must be maintained; 2) expeditious judicial review of that decision must be available; and 3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court. FW/PBS, Inc., 493 U.S. at 227 (citing Freedman, 380 U.S. at 58-60).

. Included in his § 1983 claim, Reyes claims that his First Amendment right to free speech had been sufficiently chilled to constitute a violation. Under the facts of this case, we find no merit to this claim. Reyes was indicted under the assumed unconstitutional parade ordinance three weeks after the initial protest; he was not arrested, warned, or harassed on the scene. Ultimately, he was found not-guilly of violating the ordinance. After being found not-guilty, Reyes was informed on March 3, 1998 that the parade ordinance would not be enforced against him in the future. The ordinance was repealed on March 10, 1998. Reyes asserts that he planned to attend a March 13 anti-abortion protest, but feared prosecution, which chilled his speech. The protest occurred without in *456 cident. Under the facts, we find this claim without merit, the ordinance repealed on March 10th could not chill speech to occur on March 13 th.
Just as importantly, Reyes suffered no loss from the ordinance in question — he was found not guilty and was assured he would not be further prosecuted under the ordinance. It appears that Reyes's main contention is freedom from criminal prosecution. As noted in Richardson v. City of South Euclid, 904 F.2d 1050, 1054 (6th Cir.1990), cert. denied, 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 681 (1991):
Freedom from criminal prosecution, [absent bad faith, see Dombrowski v. Pfister, 380 U.S. 479, 480, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965),] is not an interest that is accorded constitutional protection. Where appropriate procedures are followed, the states recognize no interest to be free from the burdens of defending oneself against an unsuccessful prosecution, and neither does the Bill of Rights.

. The intervening decision of the Court in Thomas, mentioned in the dissenting opinion, only strengthens our position. The necessity to argue overbreadth to obtain a supporting reason for the conclusion reached by the dissent illustrates perfectly the reasoning of the Sixth Circuit, which we have quoted, slip p. 12, that holdings such as that advocated by the dissent, amounting to an automatic cause of action, "... would place state law enforcement officials in the precarious position of having to determine whether a new law is valid and worthy of their enforcement before risking, through enforcement, suffering damages should the law later be deemed invalid.”

. While this appeal was pending in this court, Reyes moved to file with the court certain supplemental materials in response to the City's brief which are: Six pages out of apparently 113 pages of a deposition of one William E. McRorie; a letter from the circuit judge of the circuit court of the City of Lynch-burg in response, and in apparent answer to Reyes’s adherents, to Reyes’s motion to reduce or modify his sentence; a copy of a newspaper article dated November 18, 1997 with respect to the demonstration which is the subject of this case; and one page out of a deposition of apparently 52 pages of a certain Colonel Charles W. Bennett, who is mentioned in the said newspaper article. Bennett *458 is apparently a police official. The defendants deny that those papers are properly a part of the record in the case, and upon examination, we believe it more likely that they are not, in which event a peremptory denial of the motion would usually be in order. In an abundance of caution, however, we grant the motion and consider the papers, none of which, singly or together, have had any bearing on our decision in this case.