Timothy COX and Cathy Rider, Plaintiffs,

v.

CITY OF CHARLESTON, SOUTH CAROLINA; Ruben Greenberg, individually and in his official capacity as Chief of Police for the City of Charleston; Joseph Riley, Jr., Mayor, individually and in his official capacity as Mayor of the City of Charleston; Captain Chin, individually and in his official capacity as an officer of the Charleston County Police Department; Officer Davis, individually and in his official capacity as an officer of the Charleston Police Department; City of Travelers Rest, South Carolina; Timothy Christy, individually and in his official capacity as Chief of Police for the City of Travelers Rest; Mann Baton, Individually and in his official capacity as Mayor of the City of Travelers Rest, Defendants.

No. 2:01–3807–18BG.

United States District Court, D. South Carolina, Charleston Division.

March 4, 2003.

584

Timothy Cox, Charleston, S.C., pro se.

Cathy Rider, North Charleston, S.C., pro se.

Alexia Pittas–Giroux, James Albert Stuckey, Jr., Stuckey Law Offices LLC, Charleston, S.C. Charles F. Turner, Jr., Clarkson, Walsh, Rheney and Turner, Greenville, S.C., for defendants.

## ORDER

NORTON, District Judge.

This case is before the court upon the magistrate judge's recommendation that defendants' motion for summary judgment be granted. This record includes a report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B) (West 2003).

### I. Time For Filing Objections

A party may object, in writing, to a magistrate judge's report within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1)(C) (West 2003). Three days are added to the ten-day period if the recommendation is mailed rather than personally served. Fed.R.Civ.P. 6(e). The magistrate judge filed his report and recommendation on August 28, 2002. Plaintiffs filed their written objections on September 16, 2002.

### II. Review of Magistrate Judge's Report

■■■ This court is charged with conducting a *de novo* review of any portion of the magistrate judge's report to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C.A. § 636(b)(1)(C) (West 2003). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). This court is not required to review under a *de novo* standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. *See id.* at 149–50, 106 S.Ct. 466; *see also McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (stating that "[w]hen a party fails to object timely to a magistrate's recommended decision, it waives

any right to further judicial review of that decision"). A party's general objections are not sufficient to challenge a magistrate judge's findings. *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505, 508–09 (6th Cir.1991).

### III. Pro Se Petitions

■■■ Plaintiffs are proceeding *pro se* in this case. *Pro se* complaints and petitions should be construed liberally by this court, and therefore, are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978). A federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Services,* 901 F.2d 387, 390–91 (4th Cir.1990).

### IV. Summary Judgment Standard

Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no requirement that the trial judge make findings of fact. *Id.* at 250, 106 S.Ct. 2505. Rather,

the threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* In other words, "to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *See Perini Corp. v. Perini Const., Inc.,* 915 F.2d 121, 124 (4th Cir.1990). An issue of fact concerns material facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. All facts and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once this burden has been met, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)); *see also Pleasurecraft Marine Engine Co. v. Thermo Power Corp.,* 272 F.3d 654, 658 (4th Cir.2001).

## V. Plaintiffs' Objections

### A. Factual Background

█ Plaintiffs object to the magistrate judge's findings of fact as to the events surrounding the Charleston Demonstration on June 20, 2001, and the Travelers Rest Demonstration on June 24, 2001. Plaintiffs argue that the magistrate judge should have limited his factual findings to the language of the Travelers Rest and Charleston parade ordinances ("Parade Ordinances"). Plaintiffs repeatedly argue that the only issue before the court is their Motion for Partial Summary Judgment on the facial validity of the Parade Ordinances, which is not based on the circumstances under which they were applied to plaintiffs at the Charleston and Travelers Rest Demonstrations on June 20 and 24, 2001. In their Complaint, plaintiffs claimed that the Parade Ordinances were unconstitutional both on their face and as they were applied to them at the Charleston and Travelers Rest Demonstrations on June 20 and 24, 2001. Defendants moved for summary judgment as to plaintiffs' facial and as-applied challenges. (Travelers Rest Ds.' Mot. Dismiss, 12/17/01; Charleston Ds.' Mot. Summ. J., 1/4/02).[1] The magistrate judge concluded that plaintiffs did not have standing to bring their as-applied claims because they never applied for, nor were denied, permits for the demonstrations at issue; were neither arrested nor prosecuted for any actions involved in the demonstrations; and were not required to disassemble or leave in either demonstration. (R & R at 10.) The magistrate judge concluded, however, that plaintiffs did have standing to bring their facial challenge. (R & R at 10–11.) Plaintiffs did not object to the magistrate judge's conclusion that they do not have

---

**1.** Although Travelers Rest filed a motion to dismiss, it submitted affidavits and other materials in support of its motion, thereby converting it into a motion for summary judgment. Fed.R.Civ.P. 12(b).

standing to bring their as-applied challenges. Because plaintiffs have failed to object to the magistrate judge's conclusion that they do not have standing to bring their as-applied challenges, this court affirms this portion of the magistrate judge's Report and Recommendation. Thus, the particular circumstances surrounding the alleged enforcement of the Parade Ordinances during the Charleston and Travelers Rest Demonstrations are no longer at issue.[2] The only issue before this court is the parties' cross-motions for summary judgment as to facial validity of the Parade Ordinances.[3]

■ Plaintiffs object to the magistrate judge's version of the Parade Ordinances in the Report and Recommendation on the grounds that several provisions relating to the cities' permitting schemes and the permit application forms were omitted. (Objs. at 9–11.) First, the magistrate judge's listing of "pertinent provisions" of the Parade Ordinances was simply an abbreviated listing of the most applicable provisions and was not an attempt to limit plaintiffs' claims. Nonetheless, plaintiffs are correct that their facial challenge applies to the entire Parade Ordinances, including the provisions relating to their permit schemes. (Travelers Rest, S.C., Ordinances §§ 7.16.010 to .090; Charleston, S.C. Ordinances, art. IX, §§ 19–306 to –337.)[4] With respect to the permit application forms, although they are not part of the Parade Ordinances, they are authoritative evidence of the implementation of the ordinances and therefore are subject to plaintiffs' facial challenge. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (explaining that in a First Amendment facial challenge the court "must consider the [government's] authoritative constructions of the ordinance, including its own implementation and interpretation of it") (internal citations omitted).

**B. The Parade Ordinances are Facially Unconstitutional Under the First Amendment**

■ Plaintiffs object to the magistrate judge's conclusion that the Parade Ordinances are facially constitutional under the First Amendment. A city is "justified in setting forth regulations and ordi-

---

**2.** Plaintiffs' objection that the magistrate judge's factual findings of the events surrounding the demonstrations were biased and based only on the affidavits presented by the defendants is moot because these facts are no longer relevant to the issue before this court. Plaintiffs' various other objections that the magistrate judge displayed bias against them are wholly unsupported and are rejected.

**3.** The as-applied challenges fail for the additional reason that plaintiff failed to adequately oppose defendants' motions for summary judgment on these claims. On January 11, 2002, plaintiffs filed a memorandum entitled "Plaintiffs Response To: Defendant's Motion to Deny Plaintiff's Motion for Partial Summary Judgment, Defendants Motion to Dismiss, and Defendants Motion for Summary Judgment" ("Opposition Memo"). In their Opposition Memo, plaintiffs only addressed their facial challenge to the Parade Ordi-

nances in their Partial Motion for Summary Judgment. Although plaintiffs stated that they were opposing all of defendants' motions, they failed to argue or offer any evidence opposing defendant's motions for summary judgment that the Parade Ordinances were not applied against them in an unconstitutional manner. As plaintiffs explained, "[t]he issue of how the Defendants of this lawsuit enforced their defective ordinances on the Plaintiffs is not the subject of the motion before the court today." (Opp. Mem. at 2.) Thus, under Fed.R.Civ.P. 56(e) plaintiffs did not meet their burden of designating specific facts showing that there is a genuine issue for trial whether the ordinances were applied to them in an unconstitutional manner.

**4.** Copies of the Parade Ordinances and permit applications are attached as exhibits to plaintiffs' Objections.

nances requiring advance parade permits as a traditional exercise of control by the local government." *Reyes v. City of Lynchburg*, 300 F.3d 449, 454 (4th Cir. 2002) (citing *Cox v. New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 85 L.Ed. 1049 (1941)). These ordinances are generally treated as time, place, and manner restrictions and "must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 n. 3, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (quoting *Forsyth*, 505 U.S. at 130, 112 S.Ct. 2395). In addition, "[a] court may invalidate a permit scheme if, despite being content neutral, the scheme vests unbridled discretion in the decision-maker." *Reyes*, 300 F.3d at 454 (citing *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–52, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)).

 The Parade Ordinances at issue are content-neutral because they set forth specific factors that may be considered in determining whether to issue a permit, none of which are based on the content of the speech. Travelers Rest Ordinance § 7.16.050; Charleston Ordinance § 19–330; *see Thomas*, 534 U.S. at 322, 122 S.Ct. 775 (reasoning that the Chicago parade ordinance was content-neutral because "[n]one of the grounds for denying a permit has anything to do with what a speaker might say"). However, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas*, 534 U.S. at 323, 122 S.Ct. 775 (citing *Forsyth County*, 505 U.S. at 131, 112 S.Ct. 2395). Accordingly, the ordinance must "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas*, 534 U.S. at 323, 122 S.Ct. 775 (citing *Niemotko v. Maryland*, 340 U.S. 268, 282 (1951)).[5] A demonstrated practice of "[g]ranting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional, but ... this abuse must be dealt with if and when a pattern of unlawful favoritism appears, rather than by insisting upon a degree of rigidity that is found in few legal arrangements." *Thomas*, 534 U.S. at 325, 122 S.Ct. 775. As the magistrate judge explained, the factors listed in both the Charleston and Travelers Rest Ordinances are specific and do not grant unbridled discretion to the official issuing the permit. (R & R at 13–14; Travelers Rest Ordinance § 7.16.050; Charleston Ordinance § 19–330.) Moreover, there is no evidence in the record

**5.** Because the Parade Ordinances are content-neutral, they are not subject to the procedural safeguards outlined in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *Thomas*, 534 U.S. at 322–23, 122 S.Ct. 775. In *Freedman*, the Supreme Court held that a film licensing process must contain the following procedural safeguards in order to avoid constituting an invalid prior restraint: 1) any restraint prior to judicial review can be imposed only for a specified brief period during which status quo must be maintained; 2) expeditious judicial review of that decision must be available; and 3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court. *Freedman*, 380 U.S. at 58–60, 85 S.Ct. 734; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). In *Thomas*, the Supreme Court explained that a permit or licensing scheme that "is not subject-matter censorship but content-neutral time, place, and manner regulation of the use of a public forum" is not subject to "the procedural requirements set forth in *Freedman*." *Thomas*, 534 U.S. at 322, 122 S.Ct. 775.

that the City of Charleston or the City of Travelers Rest has implemented the Parade Ordinances in manner that discriminated based on content. Although plaintiffs claim that pro-life groups have been discriminated against, (Objs. at 23–24), this allegation is made for the first time in their Objections and is not supported by any evidence. In addition, it is contradicted by evidence that abortion protesters, including plaintiff Rider, have been routinely granted permits in both Travelers Rest and Charleston. (Gaddy Aff. Ex. A.; Greenberg Aff.; Chinn Aff.) Thus, the Travelers Rest and Charleston Ordinances are content-neutral and contain adequate safeguards to ensure that they are not applied in a content-based manner.

In their Objections, plaintiffs argue that the Parade Ordinances are unconstitutional on their face because they are overbroad. "The First Amendment requires that even a content-neutral permit scheme regulating speech in a public forum be 'narrowly tailored to serve a significant governmental interest.'" *Reyes*, 300 F.3d at 462 (J. Michael dissenting on other grounds) (quoting *Forsyth*, 505 U.S. at 130, 112 S.Ct. 2395). "Narrow tailoring in the First Amendment context does not require the government to regulate by using 'the least restrictive or least intrusive means' available to achieve its goals, but it does prohibit the government from 'regulat[ing] expression in such a

manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *Reyes*, 300 F.3d at 462 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). "Similarly, when an ordinance 'sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected,' it is unconstitutional due to overbreadth." *Reyes*, 300 F.3d at 462–63 (quoting *Forsyth*, 505 U.S. at 130, 112 S.Ct. 2395). "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).[6]

Defendants argue that the governmental purpose of the Parade Ordinances is to preserve order and to assure the safety of society. (Charleston Mem. Opp. Pls.' Mot. Partial Summ. J. at 7; Travelers Rest Mem. Supp. Mot. Dismiss at 10.) It is well-settled that cities have a legitimate interest in protecting their citizens and ensuring that their streets and sidewalks are safe for everyone. *Madsen v. Women's Health Center*, 512 U.S. 753, 768, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (finding the state "has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks ..."). The dispute therefore is whether the Parade Ordinances are narrowly tailored to meet the cities' legiti-

---

**6.** The term "overbroad" has been used by courts to refer to two related concepts. The "overbreadth" doctrine is an exception in First Amendment cases to standing requirements that allows "a litigant whose own conduct is unprotected to assert the rights of third parties to challenge a statute, even though 'as applied' to him the statute would be constitutional." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 965 n. 13, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). " 'Overbreadth' has also been used to describe an argument that a statute is not

narrowly tailored to meet a significant government interest." *Id.* Here, plaintiffs are proceeding under the overbreadth exception to standing requirements because plaintiffs' are making a facial challenge to the Parade Ordinances in circumstances other than those in which the ordinances were applied to them. In addition, plaintiffs are arguing that the Parade Ordinances are "overbroad" because they contain provisions that are not narrowly tailored to meet their stated objectives.

mate governmental interest in ensuring the safety of their streets and sidewalks.

 The primary ground on which plaintiffs challenge the Parade Ordinances is their lack of an exception for gatherings of less than fifty people. Plaintiffs contend that the Parade Ordinances are overbroad because they would prevent one person from spontaneously protesting in a public forum. In a First Amendment facial challenge, courts look not only to the face of the challenged ordinance but also "consider the [government's] authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth*, 505 U.S. at 131, 112 S.Ct. 2395. Charleston admits that "[t]wo people handing out leaflets could be construed as constituting a 'demonstration'; even one person standing on the sidewalk espousing emphatically and passionately about his beliefs could be construed as a parade." (Charleston Mem. Opp. Pls.' Mot. Partial Summ. J. at 9.) Similarly, Travelers Rest's record of permits issued between 1992 and 2001 shows that it has required gatherings of only a few people to obtain permits.[7] (Gaddy Aff. Ex. A.) Thus, plaintiffs are correct that the Parade Ordinances, both on their face and as implemented and interpreted by Charleston and Travelers Rest, do not contain an exception for small gatherings or single protesters.

Plaintiffs argue that other courts have struck down parade ordinances that do not contain a exemption for gatherings of less than fifty people. Although plaintiffs are correct that many parade ordinances contain such a fifty-person exemption, they have not cited any cases in which this exemption was judicially mandated. First, although the Court in *Thomas* noted that the Chicago ordinance contained a fifty-person exemption, this exemption was not at issue in the case. *See* 534 U.S. at 322, 122 S.Ct. 775. Second, although plaintiffs contend that the parade ordinances of Beaufort, Mt. Pleasant, and Port Royal, South Carolina were changed to include a fifty-person exemption as part of settlements with plaintiffs, these settlement agreements do not represent a judicial opinion on the constitutionality of these ordinances. Finally, although plaintiffs have presented a case in which the court held that the North Charleston, South Carolina ordinance was facially unconstitutional, the court's opinion does not indicate that the lack of an exemption for small gatherings was at issue. *Rider v. City of N. Charleston, et al.,* Civ. No. 2:95–1944–23 (D.S.C. filed June 14, 1996).

 Nonetheless, this court agrees that the Parade Ordinances violate the First Amendment because they do not contain any exemption for small gatherings or sole protesters. Although the cities have a legitimate safety interest in controlling organized protests, parades, or other significant gatherings on the streets and sidewalks, requiring gatherings of a few people or a single protester to obtain a permit days in advance before protesting in a public forum sweeps too broadly and is not narrowly tailored to achieve the cities' safety interest. *See Reyes*, 300 F.3d at 465 (Michaels J. dissenting on other grounds) (finding that local parade ordinance was not narrowly tailored to safety interest because "[t]wo peaceful protesters quietly handing out leaflets or holding signs on a sleepy sidewalk or in the middle of a public park pose no threat to vehicular or pedestrian traffic or to public order and require little or no attention from police

---

**7.** Travelers Rest argues that their history shows that they have never *denied* permits to small gatherings. While this may be true, Travelers Rest does not dispute that these small gatherings are still required to comply with the permit process.

and fire officials"); *Grossman v. City of Portland,* 33 F.3d 1200, 1205–08 (9th Cir. 1994) (holding that ordinance requiring permit for any organized demonstration in a public park was not narrowly tailored to serve city's interests where ordinance was applied to groups of six to eight peaceful protesters carrying signs in a public park); *Community for Creative Non–Violence v. Turner,* 893 F.2d 1387, 1392 (D.C.Cir.1990) (holding that regulation requiring a permit for two or more people speaking together in any above-ground areas of the Metro was not narrowly tailored because "it is clear that many of these activities would not interfere meaningfully with WMATA's asserted interests"). Thus, both ordinances are facially unconstitutional to the extent that they require small gatherings, including sole protestors, to obtain a permit before protesting in a public forum.

Plaintiffs also argue that the Charleston Ordinance is overbroad because the Charleston Police Department Public Activity Request Form ("Activity Request Form"), requires an applicant to submit his or her Social Security number before obtaining a permit. Although the text of the Charleston Ordinance does not contain such a requirement, it is included in the Activity Request Form and therefore is part of the statutory scheme as implemented. *Forsyth,* 505 U.S. at 131, 112 S.Ct. 2395. The City of Charleston has not illustrated how the provision of one's Social Security number will serve its interests in preserving public safety and order. "In the absence of any articulated interest to be served by the restriction, the court is unable to determine whether the restriction is narrowly tailored to serve a specific goal." *See United Food & Commercial Workers Union Local 442 v. City of Valdosta,* 861 F.Supp. 1570, 1583 (M.D.Ga. 1994). Charleston may have an significant safety interest in obtaining certain contact information from the person organizing the parade so that they may communicate about the details of the event, but it has not explained how a Social Security number would serve to advance this purpose. On the other hand, a requirement that an individual provide such sensitive personal information before protesting on a city street would certainly "chill" the speech potential protesters by discouraging them from applying for a permit. In today's world, one's Social Security number can be used to derive a myriad of information about that individual. Moreover, this court can take judicial notice that identity theft is an increasing worldwide problem. In light of this danger and because the City of Charleston has not articulated how the provision of a Social Security number serves its safety interests, the court finds that the Charleston Ordinance, as implemented through the Activity Request Form, is overbroad to the extent that it requires an applicant to provide his or her Social Security number to protest on a city street. *See Rosen v. Port of Portland* 641 F.2d 1243, 1250 (9th Cir.1981) (holding that the requirement that those desiring to exercise free speech rights identify themselves and supply the names, addresses, and telephone numbers of sponsoring or responsible persons has a "chilling effect" on free speech and is unconstitutionally overbroad) (citing *Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960)).

Plaintiffs object to the magistrate judge's finding that the time restrictions in the Travelers Rest Ordinance are constitutional. Specifically, plaintiffs argue that section 7.16.090 of the Travelers Rest Ordinance is unconstitutional because it prohibits any gatherings before 1:00 p.m. on Sunday. The Fourth Circuit has upheld the Charleston Ordinance's provision prohibiting parades that convene before 8:00 A.M. or terminate after 8:00 P.M. as a

reasonable time restriction. *Abernathy v. Conroy,* 429 F.2d 1170, 1174 (4th Cir.1970). The court reasoned:

> "The evening is traditionally a time of repose, when people retire to their homes for relaxation. There is a significant state interest in preserving reasonable serenity during this period for the mutual benefit of all citizens. . . . Restricting parades to daylight hours in order to accomplish this legitimate end is not an unreasonable limitation upon the right of free expression. . . . . Another substantial reason for prohibiting night parades is that crime prevention and maintenance of the public safety are more difficult after dark. . . . On balance, a prohibition against parades at night reasonably accommodates both free expression and crime prevention by discouraging violence during parades and increasing the authorities' ability to apprehend persons who do violate the law."

*Id.* (internal footnotes omitted). However, neither of these justifications applies to the restriction on parades during Sunday morning daylight hours. *See Beckerman v. City of Tupelo, Miss.,* 664 F.2d 502, 512 (5th Cir.1981) (striking down an ordinance that forbade parades after 6:00 p.m.; distinguishing the daylight concerns in *Abernathy* because "it remains light in Tupelo well past 6 p.m. for a good part of the year").

Travelers Rest has not explained how its absolute ban on Sunday morning parades serves its stated purposes of safety and preserving order in the community. If the city believes that traffic or other concerns are heightened on Sunday morning, it has the burden of articulating and demonstrating this argument. *City of Valdosta,* 861 F.Supp. at 1583. ("Although the court could speculate as to the type of interests that would be served by such a ban, it is not the court's responsibility to do so.") (striking down restriction on parades after 4:00 p.m. on Sundays); *see also Hurwitz v. Boyle,* 117 N.J.Super. 196, 284 A.2d 190, 195 (1971) (finding no justification for prohibiting parades on Sundays before 1:30 p.m. because "on Sunday mornings municipal streets do not have the average shopper or the average office worker" and "the streets are less crowded on Sundays than at any other time during the week."). Thus, the absolute prohibition in section 7.16.090 of the Travelers Rest Ordinance on the issuance of parade permits on Sunday morning between 8:00 a.m. and 1:00 p.m. is not narrowly tailored to Travelers Rest's stated interest in ensuring the safety of its streets and sidewalks and therefore is unconstitutional.[8]

## C. Attorneys Fees

 Plaintiff concede that they are not seeking attorneys fees in this action; rather, they claim they are seeking compensatory damages for the inconvenience that this case has caused them. (Objs. at 28–29.) As explained above, plaintiffs' as-ap-

---

8. The magistrate judge found that "prohibiting a parade during the traditional hours of sleep *and Sunday morning church* activities falls within a substantial spectrum of conduct which may be regulated and is not unconstitutional for overbreadth." (R & R at 20.) Plaintiffs also have objected to the magistrate judge's conclusion on the basis that it violates the Establishment Clause. *See* U.S. Const. amend I. The court need not reach this issue because the court has concluded that the ordi-

nance is not narrowly tailored to serve Travelers Rest's stated goal of ensuring safety. However, if Travelers Rest were to have adopted this justification, the court notes that it would have raised serious constitutional issues under the Establishment Clause because it would have represented a government policy of favoring religions who observe Sunday morning as their traditional time of worship.

plied challenges have been dismissed and are not before this court. Therefore, plaintiffs may not recover any compensatory damages for any alleged damages they suffered through the application of the Parade Ordinances.

## VI. CONCLUSION

It is therefore,

**ORDERED**, for the foregoing reasons and those stated by the magistrate judge, that plaintiffs' motion for partial summary judgment be **GRANTED** and defendants' motions for summary judgment be **DENIED** in part because the Charleston Ordinance and the Travelers Rest Ordinance are facially unconstitutional under the First Amendment for the reasons explained in this opinion.

It is **FURTHER ORDERED** that the magistrate judge's report and recommendation be **AFFIRMED** and defendants' motions for summary judgment be **GRANTED** as to plaintiffs' claims that the Parade Ordinances were applied to them in a unconstitutional manner during the Charleston Demonstration on June 20, 2001, and the Travelers Rest Demonstration on June 24, 2001.

It is **FURTHER ORDERED** that defendants' motion for summary judgment that plaintiffs are not entitled, as a matter of law, to an award of attorneys' fees in this matter be **GRANTED**.

**AND IT IS SO ORDERED.**