[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-13482

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-02920 CV-WBH-1

THIS THAT AND THE OTHER GIFT AND
TOBACCO, INC., d.b.a. This That & The
Other, CHRISTOPHER PREWETT,

Plaintiffs-Appellants,

versus

COBB COUNTY, GEORGIA, PAUL FOSTER,
in his official capacity as Business License
Division Manager for Cobb County, Georgia, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 18, 2002)**

Before BIRCH, CARNES and COX, Circuit Judges.

COX, Circuit Judge:

This case requires us to consider issues of federal statutory and constitutional law in the context of a state's effort to prohibit the advertising and distribution of sexual devices. The district court concluded that the plaintiffs did not demonstrate a substantial likelihood of success on the merits of their claims, and for that reason declined to enjoin preliminarily the enforcement of a Georgia statute banning such advertising and distribution as obscene. Because we conclude that the plaintiffs have demonstrated a substantial likelihood of success on their claim that the advertising ban violates the First Amendment, however, we vacate and remand for further proceedings to determine whether a preliminary injunction should issue with regard to the ban on advertising.

## I. Background

This That & The Other Gift and Tobacco, Inc. and Christopher Prewett (collectively referred to as "the plaintiffs") own and operate a retail establishment in Cobb County, Georgia. In applying for the permits and licenses necessary to operate their business, the plaintiffs informed the County that they would be selling devices designed or marketed primarily for the stimulation of human genital organs. The County and its Business License Division Manager, Paul Foster, approved the plaintiffs' licenses and permits on April 24, 1998, although they later expressed concern about the nature of the devices sold by the plaintiffs. Nonetheless, the

plaintiffs' licenses and permits subsequently were renewed in 1999 and 2000.

In early 2000, however, the County threatened the plaintiffs with criminal prosecution and adverse administrative action for violating O.C.G.A. § 16-12-80, which prohibits the advertising and distribution of obscene material. This statute defines as obscene "[a]ny device designed or marketed as useful primarily for the stimulation of human genital organs." O.C.G.A. § 16-12-80(c). The statute also provides an affirmative defense where dissemination of obscene material is restricted to: (1) a faculty member or student "associated with an institution of higher learning" who is "teaching or pursuing a course of study related to such material"; or (2) "[a] person whose receipt of such material was authorized in writing by a licensed medical practitioner or psychiatrist." O.C.G.A. § 16-12-80(e). Based on the threats made by the County, the plaintiffs ceased selling sexual devices on June 25, 2000. The record does not indicate either the specific devices that gave rise to the threats of prosecution or the devices that the plaintiffs have refrained from selling as a result of those threats.

The plaintiffs filed this action on November 3, 2000, raising claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Georgia law. The plaintiffs seek money damages, injunctive relief, and a declaratory judgment that O.C.G.A. § 16-12-80 is unconstitutional. The plaintiffs subsequently filed a motion for a preliminary injunction restraining the County from enforcing O.C.G.A. § 16-12-80. Based on the

3

plaintiffs' verified complaint, affidavits, and other documents, but without conducting an evidentiary hearing, the district court denied the plaintiffs' request. This interlocutory appeal follows. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## II.  Standard of Review

In reviewing the district court's denial of a request for a preliminary injunction, we review findings of fact for clear error and conclusions of law de novo. *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001). The actual denial of the plaintiffs' request for a preliminary injunction may be reversed only if there was a clear abuse of discretion. *Siegel v. Lepore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (en banc).

## III.  Discussion

To be entitled to a preliminary injunction, the plaintiffs must demonstrate that (1) they have a substantial likelihood of success on the merits, (2) they will suffer irreparable injury unless the injunction issues, (3) the threatened injury to them outweighs the damage that the injunction would have on the opposing parties, and (4) if issued, the injunction would not disserve the public interest. *See, e.g., Horton*, 272 F.3d at 1326. In this case, the district court concluded that the plaintiffs did not demonstrate a substantial likelihood of success and thus denied the request for a

preliminary injunction without considering the other prerequisites. On appeal, the plaintiffs present four arguments that they contend show a substantial likelihood of success on their claims under § 1983 and § 1985: (1) enforcing O.C.G.A. § 16-12-80 violates the Supremacy Clause because the statute is preempted by the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c *et seq.*; (2) O.C.G.A. § 16-12-80 bans protected speech in violation of the First Amendment, as applied to the states through the Fourteenth Amendment; (3) O.C.G.A. § 16-12-80 is unconstitutionally vague as applied in this case; and (4) the County has applied O.C.G.A. § 16-12-80 in an arbitrary and unequal manner that violates principles of due process and equal protection. On this record, the fourth argument is meritless and does not warrant further discussion. *See* 11th Cir. R. 36-1. We consider the remaining arguments in turn.

## A. *Preemption*

The plaintiffs contend that O.C.G.A. § 16-12-80 is preempted, both expressly and implicitly, by the MDA. We disagree.

The Supreme Court has recognized three types of preemption: (1) express preemption, where a federal statute contains "explicit preemptive language"; (2) field preemption, where the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it";

5

and (3) conflict preemption, where "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 604-05, 111 S. Ct. 2476, 2481-82 (1991). Congressional intent is the "ultimate touchstone" in a preemption case, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996), and this intent "governs our determination of whether federal law preempts state law." *Boyles v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1267 (11th Cir. 2000).

We readily conclude that the MDA does not expressly preempt O.C.G.A. § 16-12-80. The plaintiffs base their claim of express preemption on 21 U.S.C. § 360k(a), which provides in relevant part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement —
>
> > (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
> >
> > (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

Although this provision expressly preempts some state law in certain instances, it is clear from the statute's language that it preempts state requirements applicable to medical devices only where those requirements differ from or add to a specific federal requirement, and only where they relate to the safety or effectiveness of the devices at issue or some other matter governed by the statute. *See Medtronic*, 518 U.S. at 500, 116 S. Ct. at 2257. Moreover, the legislative history makes clear that the purpose of the MDA is "to provide for the safety and effectiveness of medical devices intended for human use." *Id.* at 490, 116 S. Ct. at 2253 (quoting Medical Device Amendments of 1976, Pub. L. No. 94-295, 90 Stat. 539 (1976) (preamble)). Because O.C.G.A. § 16-12-80 does not impose any requirements relating to the safety or effectiveness of the sexual devices mentioned by the plaintiffs, but rather relates to public morality and the distribution of obscene material, it is not expressly preempted by § 360k(a).

For similar reasons, O.C.G.A. § 16-12-80 is not implicitly preempted.[1] With regard to field preemption, we find no clear and manifest indication that Congress intended the MDA to displace state authority over public morality. *See Medtronic*,

---

[1]The district court found the plaintiffs' implied preemption argument to be without merit because the MDA expressly provides the parameters of preemption. The existence of an express preemption clause, however, neither bars the ordinary working of conflict preemption principles nor by itself precludes a finding of implied preemption. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 354, 121 S. Ct. 1012, 1019 (2001); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998).

518 U.S. at 485, 116 S. Ct. at 2250 (stating that fields traditionally occupied by the states are assumed not to be supplanted unless there is clear and manifest purpose to the contrary); *Williams v. Pryor*, 240 F.3d 944, 949 (11th Cir. 2001) ("The crafting and safeguarding of public morality has long been an established part of the States' plenary police power . . . ."). Additionally, there is no conflict preemption because it is not impossible to comply with both the MDA and O.C.G.A. § 16-12-80, nor does the Georgia statute stand as an obstacle to Congress's objectives in enacting the MDA. The MDA does not regulate what medical devices may be considered obscene or offensive to public morals, nor does it dictate that any particular medical device must be made available to consumers. Rather, as demonstrated, Congress enacted the MDA only to ensure the minimal safety of those medical devices that actually reach the marketplace. *See Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1378, 1380 (11th Cir. 2001). Georgia's obscenity statute does not conflict with that objective, and it is therefore not preempted by the MDA.

Because the MDA does not preempt O.C.G.A. § 16-12-80 as it relates to sexual devices, the district court did not err in concluding that the plaintiffs failed to demonstrate a substantial likelihood of success based on this argument.

## B. *First Amendment*

The plaintiffs likewise contend that O.C.G.A. § 16-12-80 forbids the advertising

of sexual devices and therefore bans commercial speech in violation of the First Amendment. For commercial speech to fall within the protections of the First Amendment, it must concern lawful activity and not be misleading. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351 (1980). If this requirement is satisfied, commercial speech may still be restricted, but only where the asserted governmental interest is substantial, the regulation directly advances that interest, and the regulation is no more extensive than necessary to serve that interest. *Id.*; *see also Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142, 114 S. Ct. 2084, 2088 (1994). Applying these standards to this case, we conclude that the advertising ban found in O.C.G.A. § 16-12-80 violates the First Amendment.

We first address whether the speech at issue is misleading or relates to unlawful activity. In analyzing this issue, the district court first concluded that it was unclear whether the sexual devices being advertised were lawful products. Additionally, the district court concluded that any advertisements for such devices would inherently mislead consumers. This was so, according to the district court, because the products could be purchased only by a limited consumer base and because a complicated legal explanation would be required to inform the public of that fact.

As the district court implicitly acknowledged, however, the statute plainly

9

allows sexual devices to be distributed to certain consumers — i.e., those individuals authorized to receive the devices by a licensed medical practitioner or psychiatrist, as well as specified students and faculty at institutions of higher learning. *See* O.C.G.A. § 16-12-80(e). Therefore, when distributed to such consumers, the products clearly are lawful. Moreover, we are not convinced that an advertisement targeting such consumers necessarily would be misleading simply because certain persons encountering the advertisement could not lawfully purchase the device, nor are we convinced that an explanation of those persons entitled to purchase the device needs to be lengthy and complex. Accordingly, we disagree with the district court's analysis of the first prong of *Central Hudson*.

We also disagree with the district court's analysis of the last prong of *Central Hudson*. Assuming that Georgia has asserted a substantial interest in safeguarding public morality, and that the ban on advertising directly advances that interest, we nonetheless conclude that the ban contained in O.C.G.A. § 16-12-80 is more extensive than necessary. Even though sexual devices clearly are lawful under certain circumstances, the statute contains a *per se* prohibition on advertising related to such devices. Distributors of sexual devices are forbidden unqualifiedly from advertising their products, even when the market they seek to reach consists of those consumers lawfully entitled to purchase those products. Less onerous restrictions adequately

10

would serve Georgia's interest, and the *per se* ban on advertising therefore violates the First Amendment.

For these reasons, the district court erred in concluding that the plaintiffs did not show a substantial likelihood of success on their First Amendment claim, and it should consider on remand whether the plaintiffs have satisfied the remaining prerequisites for a preliminary injunction.

## C. *Void for Vagueness*

Finally, the plaintiffs contend that O.C.G.A. § 16-12-80 is unconstitutionally vague because the medical necessity exception found in § 16-12-80(e)(2) fails to give adequate notice as to what conduct is prohibited or allowed under that exception.[2] On the record before us, we find no error in the district court's denial of preliminary relief as it relates to the plaintiffs' vagueness allegations.

Limiting our discussion to the specific arguments presented in this appeal, we do not think that the plaintiffs have shown that their vagueness challenge has a substantial likelihood of success. The medical necessity exception provides an affirmative defense if "dissemination of the [obscene] material was restricted to . . .[a] person whose receipt of such material was authorized in writing by a licensed medical

---

[2]The plaintiffs do not raise on appeal any vagueness challenge to the educational exception found in O.C.G.A. § 16-12-80(e)(1).

11

practitioner or psychiatrist." O.C.G.A. § 16-12-80(e)(2). The plaintiffs complain that they cannot determine who constitutes a "licensed medical practitioner," nor can they determine what type of "writing" is required to authorize receipt. The plaintiffs then assume that a formal prescription is required and assert that, for this reason, it is unclear whether sexual devices may be dispensed by people other than pharmacists. Finally, the plaintiffs contend that, even if people other than pharmacists may distribute sexual devices, it is unclear whether they lawfully can obtain such devices in the first place.

We agree that the wording of the medical necessity exception is not precise in all respects. But the Constitution does not require precision; "all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding.'" *Roth v. United States*, 354 U.S. 476, 491, 77 S. Ct. 1304, 1312 (1957) (quoting *United States v. Petrillo*, 332 U.S. 1, 7-8, 67 S. Ct. 1538, 1542 (1947)). We are not convinced that a reasonable person reading O.C.G.A. § 16-12-80 with common understanding would not be able to discern the meanings of the terms "licensed medical practitioner" or "writing." We note also that the terms "prescription" and "pharmacy" are not found anywhere in the relevant provision. Moreover, because the statute makes it an offense for "[a] person" to distribute obscene material, *see* O.C.G.A. § 16-12-80(a), it is reasonable to assume

12

that this all-inclusive term applies equally to the affirmative defense, meaning that any person able to prove the affirmative defense may lawfully distribute sexual devices. If a person can distribute sexual devices, it also stands to reason that he lawfully may obtain such devices himself, as the plaintiffs concede elsewhere in their brief. We find no error in the denial of preliminary relief on the basis of the vagueness arguments presented by the plaintiffs.

## IV. Conclusion

Because we conclude that the district court erred in its analysis of the plaintiffs' claim for violations of the First Amendment, we vacate the denial of preliminary injunction as it relates to that claim and remand for further proceedings consistent with this opinion. The denial of preliminary injunctive relief is otherwise affirmed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.