ANDERSON, Circuit Judge:
INTRODUCTION
Martha Burk, the National Council of Women’s Organizations, and the Rainbow/PUSH Coalition (referred to collectively as “Burk”) appeal from the district court’s denial of their motion for preliminary injunction in a challenge to the constitutionality of Augusta-Richmond County’s permitting requirement for public demonstrations in groups of five or more people. The appeal presents two questions: (1) the facial constitutionality of requiring groups of five or more persons to obtain a permit before publicly engaging in political expression in a public forum; and (2) whether requiring permit applicants to submit an indemnification agreement “in a form satisfactory” to the county attorney grants the attorney unconstitutional discretion over permitting decisions. We find the Ordinance unconstitutional in each respect and reverse.
A. The Augusta-Richmond County Ordinance
Section 3-4-11 of the Augusta-Richmond County Code (the “Ordinance”), enacted in anticipation of protests during the then-forthcoming Masters Golf Tournament held annually at the Augusta National Golf Club, states:
*1250 There shall be no public demonstration or protest, (hereinafter collectively referred to as “event”) consisting of five (5) or more persons on any sidewalk, street, public right-of-way or other public property within Augusta unless a permit for same has been issued for such event by the Sheriff of Richmond County-
Augusta-Richmond County Code § 3-4-11. The Code defines “Protest/Demonstration” as “Any expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons, or the display of signs, posters, banners, and the like.” § 3^-l(e). Violating the Ordinance is a misdemeanor punishable by a $1,000 fine and/or 60 days imprisonment. §§ 3-4-13; 1-6-1.
In addition to information such as the name and address of the applicant and a description of the planned event, see §§ 3— 4 — 11(a)(1)—(2), a permit applicant must furnish an indemnification and hold-harmless agreement suitable to the county attorney, § 3-4-ll(a)(3). The County Sheriff may deny an application for any of several reasons. See § 3^ — 11(b)(3).
B. Procedural History
Burk sued the Augusta-Richmond County Consolidated Government, the Augusta-Richmond County Commission, the Mayor of Augusta, and the Richmond County Sheriff (collectively, “the County”) under 42 U.S.C. § 1983 to enjoin enforcement of the Ordinance, claiming it violated her First Amendment right to free speech. The district court converted Burk’s motion for a temporary restraining order into a motion for preliminary injunction and denied it, finding that Burk failed to prove a likelihood of success on the merits. Burk appeals that determination and asks this Court to uphold her facial challenge to the Ordinance.[1] Because this appeal presents pure questions of law and our disposition dictates the outcome of .the underlying claim, we accept the invitation. See, e.g., Callaway v. Block, 763 F.2d 1283, 1287 & n. 6 (11th Cir.1985). We review the district court’s legal conclusions de novo. This That & the Other Gift & Tobacco, Inc. v. Cobb County, 285 F.3d 1319, 1321 (11th Cir.2002).
DISCUSSION
A. The Constitutionality of the Permitting Provision
Burk argues that the permitting provision constitutes a facial violation of the First Amendment by impermissibly discriminating on the basis of content of speech in public fora[2] and by granting the County Sheriff excessive discretion over permitting decisions. Because we agree with her on content discrimination, we decline to reach her discretion argument as it relates to the permitting requirement generally.
Because it requires groups of five or more people to obtain permission from the County Sheriff in order to carry out a protest or demonstration, the Augusta-Richmond Ordinance is a prior restraint on speech. See United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir.2000) *1251 (“A prior restraint of expression exists when the government can deny access to a forum before the expression occurs.”). Prior restraints are presumptively unconstitutional and face strict scrutiny. Id. at 1237; Church of Scientology Flag Serv. v. City of Cleanvater, 2 F.3d 1514, 1547-48 (11th Cir.1993). Nonetheless, a prior restraint may be approved if it qualifies as a regulation of the time, place, and manner of expression rather than a regulation of content. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1316 (11th Cir.2000). A content-neutral time, place, and manner regulation must leave open alternative channels of communication and survive “intermediate scrutiny,” the requirement that it not restrict substantially more speech than necessary to further a legitimate government interest. Ward, 491 U.S. at 799, 109 S.Ct. at 2758.[3] By contrast, content-based speech regulations face “strict scrutiny,” the requirement that the government use the least restrictive means of advancing a compelling government interest. United States v. Playboy Entm’t Group, 529 U.S. 803, 813, 120 S.Ct. 1878, 1886, 146 L.Ed.2d 865 (2000).
Accordingly, we first inquire whether the Ordinance is content-neutral. See Ward, 491 U.S. at 791, 109 S.Ct. at 2754. It is not. The Ordinance applies only to “public demonstration or protest,” § 3-4-11, defined as “support for, or protest of, any person, issue, political or other cause or action,” § 3-4-l(e). Neither in its brief nor at oral argument has the County disputed Burk’s assertion that this language targets “political” expression, however defined.[4] Nor has the County disputed the fact that the Ordinance leaves other speech untouched. The Ordinance therefore classifies and regulates expression on the basis of content. Accord Hall v. Bd. of Sch. Comm’rs, 681 F.2d 965, 970-71 (5th Cir. Unit B 1982) (“The Board has sought to regulate that speech based upon its content: whether it is ‘political or sectarian,’ or ‘special interest material.’ This is not regulation of ‘time, place, or manner’ of expression”);[5] see also Consol. Edison Co. v. Pub. Serv. Comm’n, 447 U.S. 530, 533, 100 S.Ct. 2326, 2330-31, 65 L.Ed.2d 319 (1980) (holding content-based a regulation that barred utility company bill inserts expressing “opinions or viewpoints on controversial issues of public policy” but did not bar “topics that are not ‘controversial issues of public policy’ ”).
The County argues that we must find the Ordinance content-neutral under Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), and Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). We disagree; we do not believe either decision erodes our holding in Hall that targeting only political speech renders a regulation content-based. We address each case in turn.[6]
*1252 In Hill v. Colorado, the Supreme Court found content-neutral a Colorado statute that prohibited any person “within the regulated areas ... to knowingly approach within eight feet of another person, without that person’s consent, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.” Id. at 707, 120 S.Ct. at 2484. The County argues that if a statute regulating only those engaged in protest, education, or counseling is content-neutral, then surely an ordinance regulating only political protests and demonstrations is content-neutral as well.
A close reading of Hill reveals that the analogy fails. Hill relied heavily on the notions that “[t]he principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys,” id. at 719, 120 S.Ct. at 2491 (citing Ward, 491 U.S. at 791, 109 S.Ct. at 2754), and “government regulation of expressive activity is ‘content neutral’ if it is justified without reference to the content of regulated speech,” id. at 720, 120 S.Ct. at 2491 (citing Ward, 491 U.S. at 791, 109 S.Ct. at 2754). The statute at issue in Hill was “justified without reference to the content of regulated speech” because it did not “distinguish among speech instances that are similarly likely to raise the legitimate concerns to which it responds.” Id. at 724, 120 S.Ct. at 2493. The distinctions it drew were justified by a legislative concern independent of content — protecting persons walking into health care facilities. Id. (“[T]he statute’s restriction seeks to protect those who enter a health care facility from the harassment, the nuisance, the persistent importuning, the dogging, and the implied threat of physical touching that can accompany an unwelcome approach within eight feet of a patient by a person wishing to argue vociferously face-to-face and perhaps thrust an undesired handbill upon her.”). In fact, the statute at issue in Hill “places no restrictions on — and clearly does not prohibit — either a particular viewpoint or any subject matter.” Id. at 723, 120 S.Ct. at 2493.
The Augusta-Richmond County Ordinance differs from the statute at issue in Hill because it “places restrictions on” certain subject matter, political expression, and is not “justified without reference to the content of regulated speech.” Id. at 720, 120 S.Ct. at 2491. In this case, the latter characteristic is apparent from the poor fit between the Ordinance’s means and purported ends. Hill instructs that “[a] statute that restricts certain categories of speech only lends itself to invidious use [the vice of content-based regulation] if there is a significant number of communications, raising the same problem that the statute was enacted to solve, that fall outside the statute’s scope, while others fall inside.” Id. at 723, 120 S.Ct. at 2493 (citing Police Dep’t of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). The statute in Hill did not “distinguish among speech instances that are similarly likely to raise the legitimate concerns to which it responds.” Id. at 724, 120 S.Ct. at 2493. By contrast, the Ordinance at issue in this case does distinguish among speech instances that raise the same concerns. The Ordinance’s purported goals are maintaining public safety, avoiding traffic congestion, keeping the peace, and providing advance notice to law enforcement officials of public events. See § 3^4-ll(b)(3). But the Ordinance regulates countless expressive activities that do not threaten public safety, traffic, or the peace, and it fails to regulate countless other expressive activities that do threaten the harms. For example, the Ordinance does not apply to numerous activities involving more than five people — e.g., a street party, a tailgating party, a sidewalk performance by a five-person musical *1253 group, or even a high school band — that will likely threaten the County’s feared harms. And the Ordinance restricts a five-person political discussion or silent sit-in on the sidewalk’s edge even though such events are unlikely to threaten the County’s feared harms.[7] In other words, there are easily “a significant number of communications, raising the same problem that the statute was enacted to solve, that fall outside the statute’s scope, while others fall inside.” Hill, 530 U.S. at 723, 120 S.Ct. at 2493. Therefore, the Ordinance is not justified by its purported content-independent goals, and the County has regulated based on content. Id. at 723-24, 120 S.Ct. at 2493.[8]
The County also misses the mark with Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420. In Frisby, the Supreme Court approved a prohibition on picketing in front of individual residences. The Court accepted the ordinance as content-neutral when construed not to exempt labor picketing. 487 U.S. at 481-82, 108 S.Ct. at 2501.
The County argues that Frisby made no mention of the possibility that the ordinance may have been content-based because it restricted picketing, which is a method of political protest, but did not restrict other expressive conduct. It argues that if regulations of “picketing” are eon tent-neutral, then regulations of “protest or demonstration” should be content-neutral.
The County errs by failing to appreciate the difference between picketing — which is a method of delivery of speech involving conduct without regard to any particular message or subject matter — and the County’s definition of “ProtesVDemonstration,” which expressly targets all expression on a certain subject matter, political speech. See § 3-4-l(e). Of course, people engaging in picketing nearly always intend to send a message of some kind along with their acts. However, the acts themselves — standing, marching, or holding a sign, for example — do not involve any particular' expressive content, and the conduct may therefore be regulated without burdening any particular viewpoint or subject matter.[9] A content-neutral conduct regulation like those at issue in Frisby and Hill “places no restrictions on — and clearly does not prohibit — either a particular viewpoint or any subject matter that may be discussed,” Hill, 530 U.S. at 723, 120 S.Ct. at 2493, and it may be said about such regulations that they have nothing to do with the content of speech but rather are imposed because of the nature of the regulated conduct, see id. at 737, 120 S.Ct. at 2500-01 (Souter, J., concurring, joined by O’Connor, J., Ginsburg, *1254 J., and Breyer, J.) (“The correct rule ... is captured in the formulation that a restriction is content-based only if it is imposed because of the content of the speech and not because of offensive behavior identified with its delivery.... The facts overwhelmingly demonstrate the validity of [the statute at issue in Hill ] as a content-neutral regulation imposed solely to regulate the manner in which speakers may conduct themselves within 100 feet of the entrance of a health care facility.”) (emphasis added) (citation omitted).[10] Thus, a content-neutral conduct regulation applies equally to all, and not just to those with a particular message or subject matter in mind. Id. at 723, 120 S.Ct. at 2493 (“Instead of drawing distinctions based on the subject matter that the ... speaker may wish to address, the statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, ■ and missionaries.”). The same cannot be said of the Augusta-Richmond County Ordinance because it applies to a particular subject matter of expression, polities, rather than to particular conduct, such as picketing.[11]
Finally, it is useful to contrast the Augusta-Richmond County Ordinance and an ordinance the Supreme Court addressed in Thomas v. Chicago Park District, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). In that case, the Supreme Court found an ordinance content-neutral and rejected a challenge under Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (requiring procedural safeguards in content-based regulatory contexts). However, the ordinance at issue in Thomas required a permit for all public assemblies of more than 50 people, regardless of purpose. The Court readily found that the ordinance was content-neutral, explaining that “the ordinance ... is not even directed to communicative activity as such, but rather to all activity conducted in a public park. The picnicker and soccer-player, no less than the political activist or parade marshal, must apply for a permit if the 50-person limit is to be exceeded.” 534 U.S. at 322, 122 S.Ct. at 779 (emphasis added). By contrast, the Augusta-Richmond County Ordinance is directed only to communicative activity, rather than to all activity, and its applicability turns solely on the subject matter of what a speaker might say. The Ordinance regulates only political speakers, leaving soccer-players, side *1255 walk performers, and tailgating groups untouched.
Because the Ordinance is a content-based prior restraint on speech, we must strictly scrutinize it to ascertain whether it employs the least restrictive means to meet a compelling government interest. See Playboy, 529 U.S. at 813, 120 S.Ct. at 1886.[12] Few laws survive such scrutiny, and this Ordinance is no exception. The County could promote its goals through numerous less restrictive means. It could, for example, target only offensive behavior or the manner of delivery of speech without regard to viewpoint or subject matter. Or it could tailor its regulation more closely to fit expressive instances or conduct likely to threaten the harms it fears. Or it could enact an ordinance like that at issue in Thomas, which applies generally, without reference to expressive content, and only to larger groups.[13] Finally, it is clear that regulating as few as five peaceful protestors (e.g. silently sitting in on the edge of the sidewalk) is not the least restrictive means of accomplishing the County’s legitimate traffic flow and peace-keeping concerns.[14]
For these reasons, we readily conclude that the County has failed to carry its burden of proving, see Playboy, 529 U.S. at 816, 120 S.Ct. at 1888, that this content-based Ordinance is sufficiently tailored to survive strict scrutiny. We hold that it is unconstitutional.
B. The Constitutionality of the Indemnification Provision
The Augusta-Richmond Ordinance also requires permit applicants to indemnify the County for damages arising from a planned protest or demonstration:
[T]he applicant shall provide an indemnification and hold harmless agreement in favor of Augusta, Georgia and its elected officials, the Augusta-Richmond County Commission, the Sheriff of Richmond County, and their officers, agents and employees in a form satisfactory to the attorney for Augusta, Georgia.
§ 3-4-ll(a)(3). Burk argues that this provision grants the county attorney excessive discretion, imports content-based criteria into the permitting process, and is over-broad and chills speech. We agree that it grants excessive discretion and therefore *1256 decline to reach Burk’s other challenges to the provision.
Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions. See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 938-39, 22 L.Ed.2d 162 (1969); Forsyth County v. Nationalist Movement, 505 U.S. 123, 130-31, 112 S.Ct. 2395, 2401-02, 120 L.Ed.2d 101 (1992). Excessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring.' See id.; Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir.1999); Miami Herald Pub. Co. v. City of Hallandale, 734 F.2d 666, 675 (11th Cir.1984). Therefore, time, place, and manner regulations must contain “narrowly drawn, reasonable and definite standards,” Thomas, 534 U.S. at 324, 122 S.Ct. at 781, “to guide the official’s decision and render it subject to effective judicial review,” id. at 323, 122 S.Ct. at 780.
We readily conclude that the indemnification provision in the Augusta-Richmond Ordinance fails to provide adequate standards. It requires an indemnification agreement “in a form satisfactory to the attorney for Augusta, Georgia,” § 3-4-11(a)(3), and gives no guidance regarding what should be considered “satisfactory.” Thus, the requirement is standardless and leaves acceptance or rejection of indemnification agreements “to the whim' of the administrator.” Thomas, 534 U.S. at 324, 122 S.Ct. at 781 (citing Forsyth County, 505 U.S. at 133, 112 S.Ct. at 2403).
The County has virtually conceded as much by arguing only that the requirement has been administered with flexibility and permissiveness. It argues that the county attorney has approved a variety of indemnification agreements, and no application has ever been denied for failure to include an agreement. The County also frames this as a “well-established practice,” see, e.g., City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 770, 108 S.Ct. 2138, 2151, 100 L.Ed.2d 771 (1988) (“The doctrine requires that the limits [on official discretion] the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.”), apparently asserting that a practice of permissiveness and flexibility somehow restrains the attorney’s discretion.
We cannot conclude on this record that the County has demonstrated a “well-established practice,” id., that subjects the •county attorney’s discretion to “narrowly drawn, reasonable and definite standards,” Thomas, 534 U.S. at 324, 122 S.Ct. at 781. The Sheriffs affidavit asserts that “to my knowledge and recollection, the Sheriffs Office has never denied a permit application for any reason related to the failure to give an indemnification and hold harmless agreement or the particular form of said agreement, which was provided by an applicant. In fact, I cannot recall any application for a permit under § 3-4-11 as amended or its predecessor being denied completely for any reason.” Even if we assume arguendo that a well-established practice of not requiring an indemnity could nullify the clear statutory mandate that “the applicant shall provide an indemnification,” § 3-4-ll(a)(3), we know that the instant ordinance has virtually no history, having been enacted only in the month before the instant applications.[15] *1257 Moreover, we also know that the applicants during this period were also given a “sample” form of indemnification agreement, which belies a well-established practice of non-enforcement. The Supreme Court in Lakewood struck a permitting ordinance as facially unconstitutional in a similar pre-enforcement challenge. 486 U.S. at 770, n. 11, 108 S.Ct. at 2151 n. 11. See also Forsyth County, 505 U.S. at 129-33, 112 S.Ct. at 2400-03 (striking an ordinance as facially unconstitutional because of overly broad discretion with respect to the fee to cover expenses associated with the permit, and noting in footnote 10 that it was irrelevant to the facial challenge that the fee charged in the instant situation was content-neutral, and that the “pervasive threat inherent in its very existence ... constitutes the danger to freedom of discussion.”).
Finally, the County cites the district court’s approval of permit fees in the case that ultimately became Thomas in the Supreme Court. That case is inapposite. The provision at issue there contained a precise fee schedule tied to the type of event and number of expected attendees, and an indemnification provision triggered by the number of people expected at the event. It left officials “little, if any, discretion to make the type of content-based determinations that [the plaintiff] and the [Supreme] Court in Forsyth are concerned about.” See MacDonald v. Chicago Park Dist., 1999 WL 203288 *5, 1999 U.S. Dist. LEXIS 5692 *17-18 (N.D.Ill.1999). Thus, it was wholly unlike the indemnification provision at issue here.
Because we find the indemnification provision unconstitutional in its grant of excessive discretion to the county attorney, we decline to reach Burk’s other arguments challenging that provision.
CONCLUSION
Section 3-4-11’s permitting requirement is unconstitutional as a content-based prior restraint that is not narrowly tailored to survive strict scrutiny. The indemnification provision is unconstitutional because it grants the county attorney excessive discretion over permitting decisions. The judgment of the district court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.

. In addition to the facial challenge Burk asserts on appeal, in the district court she also challenged the Ordinance as applied to her. She does not appeal the denial of her motion for preliminary injunction with respect to the as-applied claim, which is thus deemed abandoned. With respect to the facial challenge, the County does not argue that a facial challenge is inappropriate under these circumstances.

. The Ordinance regulates speech on sidewalks, streets, public rights-of-way, and "any other public property.” § 3-4-11. No one disputes that this case involves speech in public fora.

. A content-neutral time, place, and manner regulation also must not vest public officials with unbridled discretion over permitting decisions. Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 938-39, 22 L.Ed.2d 162 (1969).

. Thus we use the term ''political'' as an apt shorthand term to describe the speech targeted by the instant ordinance.

. In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982), this Circuit adopted as binding precedent decisions issued by Unit B of the former Fifth Circuit after September 30, 1981.

.The County also argues the Ordinance is not content-based because it applies equally to all political speech. That argument misses the mark completely. It asserts only that the Ordinance does not discriminate based on viewpoint and fails to address the issue of subject-matter discrimination.

. The County's poor focus on targeting the harm it has identified is highlighted by the existence of a separate permitting requirement for all gatherings involving more than 1,000 people. See §§ 3-4-l(b); 3-4-3. The County cannot seriously believe that political expression involving as few as five people is likely to disrupt traffic, disturb the peace, threaten public safety, and require advance notice to public officials, but that other public gatherings only threaten such harms when they involve more than 1,000 participants.

. While an express disavowal of any intent to regulate the content of speech, as contained in § 3-4-11(d), may be taken into account as relevant evidence, we cannot conclude that it can nullify the clear and obvious distinction among subject matters contained in the Ordinance and the "significant number of communications raising the same problem ... that fall outside the statute's scope, while others fall inside," Hill, 530 U.S. at 723, 120 S.Ct. at 2493. In such circumstances, we cannot conclude that there is a clear intent not to regulate the content of speech.

.Thus picketing is distinct from conduct such as flag-burning that is clearly intended to express a particularized message. See United States v. Eichman, 496 U.S. 310, 315, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990).

. Justice Scalia, joined by Justice Thomas, dissenting in Hill, made this same point when he distinguished picketing as a restriction on "a particular manner of expression.” Id. at 744, 120 S.Ct. at 2505. This point was also made by Justice Brennan, joined by Justice Marshall, dissenting in Frisby. See 487 U.S. at 491-92, 108 S.Ct. at 2506 (“The ordinance before us absolutely prohibits picketing 'before or about' any residence in the town ..., thereby restricting a manner of speech in a traditional public forum. Consequently, as the Court correctly states, the ordinance is subject to the well-settled time, place and manner test.”).

. Thus, Frisby would be more apposite if instead of prohibiting picketing in front of individual residences, the ordinance at issue there prohibited all political expression in front of individual residences. Like the ordinance at issue here, it would have been a content-based regulation of expression on its face rather than a content-neutral regulation of conduct; and it would not have been justified without reference to content because of the poor fit between its means and purported goals.
And the instant case would be more like Frisby if the Ordinance regulated only displays of signs, posters, or banners rather than all political expression in groups of five or more, see § 3-4-1 (e) ("[a]ny expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons”) (emphasis added), and only in particular locations rather than in all public space, § 3-4-11.

. A content-based prior restraint must also satisfy the procedural requirements of Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. However, Burk does not challenge the Ordinance on Freedman grounds.

. Because we hold that the Ordinance is content-based and fails strict scrutiny, we need not address Burk’s argument that because it applies to groups as small as five persons, the Ordinance would fail even the less stringent tailoring requirement for content-neutral regulations that the government not burden “substantially more speech than is necessary to further the government's legitimate interests.” Ward, 491 U.S. at 799, 109 S.Ct. at 2758. We do note that several courts have invalidated content-neutral permitting requirements because their application to small groups rendered them insufficiently tailored. See Douglas v. Brownell, 88 F.3d 1511, 1524 (8th Cir.1996) (10 or more people); Grossman v. City of Portland, 33 F.3d 1200, 1206 (9th Cir.1994) (6 to 8 people); Community for Creative Non-Violence v. Turner, 893 F.2d 1387, 1392 (D.C.Cir.1990) (2 or more people); Cox v. City of Charleston, 250 F.Supp.2d 582, 590 (D.S.C.2003) ("small gatherings or sole protestors”).

.It is clear from the applications received by the County and the number of persons desiring to demonstrate in a location surrounding the entrance to the Masters Tournament that the County's legitimate interest is veiy substantial. Because we find that the Ordinance is not narrowly tailored, we need not determine whether the County’s interests are compelling. However, as suggested in the text, the County's interests can be protected by an appropriately drafted ordinance or otherwise without violating the First Amendment.

. We also know that an application can be denied for failure to fully complete and properly execute any required submission, 3-4- *1257 11(b)(3)(a), which includes the indemnification agreement.