JULIE CARNES, Circuit Judge,
concurring:
I concur in the panel opinion’s holding that the Walker County School Board’s public comment policy is unconstitutional because it gives the Superintendent unbridled discretion to prohibit speech that is within the scope of and otherwise permitted by the policy.[1]1 further agree that the proper remedy to address the constitutional violation is an injunction precluding the Board from enforcing the policy to the extent it grants such unbridled discretion to the Superintendent. I write separately, however, because I conclude that the prior restraint analysis underpinning the panel opinion is not applicable to a comment policy governing speech in a limited public forum, which is what the school board meetings in this case were. Instead of applying prior restraint analysis, I would resolve the appeal simply by applying the unbridled discretion rule as set forth by this Court in Atlanta Journal and Constitution v. City of Atlanta Department of Aviation (“AJC”), 322 F.3d 1298 (11th Cir. 2003).
School board meetings are not traditional public fora. See Bloedorn v. Grube, 631 F.3d 1218, 1231 (11th Cir. 2011) (“Traditional public fora are public areas such as streets and parks that [historically] have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.” (internal quotation marks omitted)). Consequently, the public is not presumptively entitled to attend or speak at such meetings. See Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 *1232 L.Ed.2d 794 (1983) (“As we have stated on several occasions, the State, no less than a private owner of property has power to preserve the property under its control for the use to which it is lawfully dedicated.” (internal quotation marks omitted)). Nonetheless, although it was not required to do so, the Board has adopted a public comment policy by which the public is invited to appear at Board meetings and to address the Board at “appropriate” times, provided the procedural requirements of the policy are met. Although the policy thus allows for public speech under certain conditions, it expressly states that the primary purpose of Board meetings is not to provide a public forum but to conduct the business of the school system. As such, the policy creates a limited public forum for qualified speakers during the public comment session of Board meetings. See Bloedorn, 631 F.3d at 1231 (explaining that a limited public forum is created “when the government limits its property to use by certain groups or dedicates it solely to the discussion of certain subjects.” (alterations adopted and internal quotation marks omitted)).
In order to be constitutionally valid, regulations imposed on speech in a limited public forum must be “reasonable and viewpoint neutral.” Id. In addition, and regardless of the type of forum involved, the regulatory scheme must not give government officials unbridled discretion to prohibit speech that is otherwise permissible in the forum. See AJC, 322 F.3d at 1310-11 (“A grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities is facially unconstitutional”). In AJC, this Court held that a plan allowing newspaper publishers to apply for permission to rent and place their newspapers in city-owned newsracks in the Atlanta airport was unconstitutional because it lacked clear standards to guide the official charged with granting applications and setting the rental fee. See id. The Court explained that:
[T]he plan permits the [official] to cancel a publisher’s license for any reason whatsoever, including unconstitutional reasons such as viewpoint discrimination. Such unbridled discretion vests broad censorial power in government and this the Constitution does not permit.
Id. at 1311.
Although AJC arose in the context of a non-public forum (the Atlanta airport), its rationale concerning unbridled discretion is equally applicable to a limited public forum. Specifically, in AJC our Court reasoned that when government officials have unbridled discretion to regulate speech, the resulting censorial power creates an unacceptable risk of viewpoint discrimination. Id. The risk of viewpoint discrimination is at least as much of a concern in a limited public forum as it is in a non-public forum. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 120, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (concluding that the denial of a religious club’s access to a limited public forum constituted impermissible viewpoint discrimination in violation of the First Amendment).
In my view, a straightforward application of the unbridled discretion rule set forth in AJC resolves this case. As relevant to Barrett’s unbridled discretion argument, the Board’s public comment policy requires that a would-be speaker who wants to address the Board about an “issue of concern” first “meet with the Superintendent and discuss [his] concern.” Following the initial meeting, and any subsequent investigation and “report back” deemed necessary by the Superintendent, the speaker must make a written request to the Superintendent “at least one week prior” to the scheduled Board meeting. The policy, however, does not place any *1233 time constraints on the Superintendent’s scheduling of this initial meeting, which is a prerequisite to speaking at a Board meeting. Rather, the Superintendent has the sole discretion to schedule—or to avoid scheduling, as the case may be—the required initial meeting at his will. In short, by declining to ever schedule a meeting, or by scheduling a meeting too late to satisfy the requirement that a putative speaker make his request at least a week before the Board meeting, the Superintendent has the power to prevent the speech. Thus, because it gives the Superintendent unbridled discretion to indefinitely delay the required initial meeting— and thereby prohibit speech that is within the scope of the forum and otherwise permissible under the policy—this regulatory scheme is constitutionally impermissible. See AJC, 322 F.3d at 1310-11.
The panel opinion relies on AJC, but it also purports to apply prior restraint analysis. I, however, do not think that prior restraint analysis applies to the Board’s public comment policy, or that it applies more generally in the limited public forum context. As the opinion points out, prior restraint analysis is most commonly applied in the permitting and licensing context. See Café Erotica of Florida, Inc. v. St. Johns Cty., 360 F.3d 1274, 1279-82 (11th Cir. 2004) (applying prior restraint analysis to a municipal sign ordinance); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1270 (11th Cir. 2005) (same); Burk v. Augusta-Richmond Cty., 365 F.3d 1247, 1250-51 (11th Cir. 2004) (describing a county ordinance requiring a permit for public demonstrations by' groups of five or more people as a prior restraint); United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir. 2000) (applying prior restraint analysis to a federal regulation requiring a permit in order to protest in national parks).
The panel cites a few cases in which prior restraint analysis has been applied in other contexts. See Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (holding that a court-ordered injunction forbidding the media from publishing information related to an ongoing criminal proceeding was an unconstitutional prior restraint). But significantly none of the cases cited by the panel apply prior restraint analysis to a speech regulation arising in the limited public forum context.[2] Instead, the cited eases apply prior restraint analysis to speech regulations imposed on private speech or on speech made in a traditional public forum.
Prior restraint analysis is readily applicable to. regulations imposed on private speech or on speech made in a traditional public forum, because it incorporates the same rigorous standards that are generally applicable in those contexts. See Perry, 460 U.S. at 45, 103 S.Ct. 948 (“In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed.”). Specifically, a prior restraint is “presumptively unconstitutional and facets] strict scrutiny.” Burk, 365 F.3d at 1251. See also Café Erotica, 360 F.3d at 1282 (noting that “any system of prior restraint bears a heavy *1234 presumption against its constitutional validity” (alterations adopted and internal quotation marks omitted)); Frandsen, 212 F.3d at 1237 (“Although prior restraints are not per se unconstitutional, there is a strong presumption against their constitutionality.”)- Nevertheless, a prior restraint may be constitutionally sound if it qualifies as a content-neutral regulation on the “time, place, and manner of expression rather than a regulation of content” and if it “survivefe] intermediate scrutiny.” Burk, 365 F.3d at 1251.
It is difficult to reconcile the above-described strict prior restraint analysis with the less rigorous standards that govern restrictions imposed on speech in a limited public forum, however. See Good News Club, 533 U.S. at 106, 121 S.Ct. 2093 (“If the forum is a traditional or open public forum, the State’s restrictions on speech are subject to stricter scrutiny than are restrictions in a limited public forum.”); AJC, 322 F.3d at 1306 (“When [a government] seeks to regulate speech on government-owned property which is not a public forum ... the standard is modified, becoming more deferential to regulation.”). For example, it is well-established that the regulation of speech in a limited public forum is only subject to reasonableness review, rather than strict or intermediate scrutiny. See Bloedorn, 631 F.3d at 1231 (“Any restrictions made on expressive activity in a limited public forum only must be reasonable[.]”). Likewise, there is no basis in the case law for treating restrictions on speech as constitutionally suspect in the limited forum context. On the contrary, such restrictions generally are constitutional as long as they are reasonable in light of the purpose served by the forum. See Bloedorn, 631 F.3d at 1231. Indeed, the restrictions need not even be the “most reasonable” ones available. See id.
Another aspect of prior restraint analysis incongruent to examination of a limited public forum is its focus on content-neutrality. See Burk, 365 F.3d at 1255 (suggesting that the constitutionality of a prior restraint often depends on whether the restraint is determined to be content-based and thus subject to strict scrutiny); Solantic, 410 F.3d at 1270 (emphasizing the importance of content-neutrality in determining whether a prior restraint is constitutional). As noted, restrictions on speech in a limited public forum need only be viewpoint-neutral to be constitutional, not content-neutral. See Bloedorn, 631 F.3d at 1231. The panel opinion thus rec-' ognizes, and the case law clearly establishes, that content-based discrimination is permissible in a limited public forum as long as viewpoint neutrality is maintained. See AJC, 322 F.3d at 1306 (“On government property that has not been made a public forum, not all speech is equally situated, and the state may draw distinctions which relate to the special purpose for which the property is used.” (internal quotation marks omitted)); Good News Club, 533 U.S. at 106, 121 S.Ct. 2093 (noting that a limited public forum may be reserved “for the discussion of certain topics”). In fact, the government’s ability to discriminate between content—or in other words, to designate the specific topics that can be discussed in the forum it has created—is a defining feature of a limited public forum. See Bloedorn, 631 F.3d at 1231 (explaining that the government’s right to make such distinctions is “implicit in the concept of a government forum that has not been opened widely to the general public” (alteration accepted and internal quotation marks omitted)).
Yet, under the panel opinion’s prior restraint analysis, the constitutionality of the Board’s public comment policy purportedly hinges on whether the policy is content-based or content-neutral. Citing Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, 348 F.3d 1278 (11th Cir. *1235 2003), the opinion notes that the lack of a time limit necessarily renders a content-based prior restraint unconstitutional. The panel then conducts a searching inquiry into whether the policy is content-based and, concluding that it is, holds that the policy is thus invalid because it does not contain any time constraints for the Superintendent to schedule the required initial meeting. Again, I agree that the policy is invalid in this respect, because by giving the Superintendent carte blanche to deny a speaker an opportunity to speak—simply by delaying the preliminary meeting that is a prerequisite for that opportunity'—the policy allows the Superintendent to discriminate based on the viewpoint of the intended speaker. But to repeat, I find the panel opinion’s focus on the absence of content-neutrality in the policy to be misplaced in what is clearly a limited public forum context.
For these reasons, I respectfully decline to join in the panel opinion’s prior restraint discussion or in its inquiry concerning whether the Board’s public comment policy is content-based. Nevertheless, and based on AJC and other guiding precedents, I concur in the panel’s holding that the policy is unconstitutional because it violates the unbridled discretion doctrine. Specifically, the policy creates a forum for public speech, conditions access to the forum on having an initial meeting with a government official, and vests in that official the sole and unfettered discretion to determine when to schedule the meeting. That amounts to a “grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities,” which is not permitted by our governing precedent. AJC, 322 F.3d at 1310. See also Rosenberger v. Rector and Visitors of Univ. of Virginia, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (“Once it has opened a limited forum ... the State must respect the lawful boundaries it has itself set.”).

. I recognize that the term "prior restraint" has been used in some non-public forum . cases to describe speech regulations that are subject to a facial constitutional challenge because they grant government officials unbridled discretion to prohibit disfavored speech. See Sentinel Commc’ns Co. v. Watts, 936 F.2d 1189, 1197 (11th Cir. 1991). But the panel opinion does more than just use the term; it incorporates aspects of an analysis that typically applies only to regulations that are called prior restraints because they either prohibit private expression or deny access to a public forum before any expression has occurred. I refer to this analysis as "prior restraint analysis.”